Vahe Khojayan (SBN 261996)
YK LAW, LLP
445 S. Figueroa Street, Ste 2280
Los Angeles, CA 90071
Tel: (213) 401-0970
Fax: (213) 529-3044
Email: vkhojayan@yklaw.us

Attorneys for debtor-in possession
21ST CENTURY VALET PARKING, LLC

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO DIVISION**

In re:

21ST CENTURY VALET PARKING, LLC

                    Debtor-in-possession

CASE NUMBER: **1:22-bk-11415-VK**

Chapter 11

**NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING REJECTION OF EMPLOYMENT AGREEMENTS WITH DEBTOR'S EMPLOYEES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT**

*[No Hearing Required]*

**TO THE UNITED STATES TRUSTEE, CREDITORS AND PARTIES IN INTEREST:**

PLEASE TAKE NOTICE THAT Debtor in possession 21st Century Valet Parking, LLC ("Debtor") hereby moves for entry of an order authorizing the Debtor to reject the employment agreements with Debtor's employees Cierra Louise Guevara, Dominque Orellana, Nancie Tapo, Delaney Ross, Samantha Borrego, Feather Jackson, Sabrina Guijarro, Yevgenya Kazaryan, Petros Kazaryan, and Marcos Renteria, that are ongoing verbal at will employment contracts.

**MOTION TO REJECT EMPLOYMENT AGREEMENTS**
- 1 -

This motion is based upon this notice and motion, the declaration of Stepan Kazaryan, pleadings and papers on file in this case and such other evidence as may be presented to the Court.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(o), any party who opposes this application may request a hearing. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days f you were served by mail or pursuant to federal Rule of Civil Procedure 5(b)(2)(D) or (F). if you timely file and serve a written opposition and request for a hearing, the Debtor will file and service a notice of hearing at least 14 days in advance of the hearing. If you fail to comply with this deadline, the Court may treat your failure as a waiver of your right to oppose this application and may grant the application without further hearing and notice. If you do not object to the relief requested in this Motion, no further action is required.

Dated: 01/25/2023                                      YK Law, LLP


    /s/ Vahe Khojayan
Vahe Khojayan, Attorney for
21st Century Valet Parking, LLC

---

**MOTION TO REJECT EMPLOYMENT AGREEMENTS**

- 2 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

A. **Statement of Facts**.

On December 6, 2023 Debtor 21st Century Valet Parking, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continues to operate as a debtor in possession with all powers and responsibilities of a trustee in this case. Debtor currently operates a topless dive bar, and employs among others, dancers and a disc jockey. Debtor also employs two of the family members of Stepan Kazaryan, debtor's managing member. Petros Kazaryan is employed in marketing/admin capacity and Yevgeniya Kazaryan is employed as a bartender. Debtor seeks to reject their employment agreements as well. Throughout this bankruptcy case, it has become clear to the Debtor that operating as a topless bar is not beneficial or financially feasible to the Debtor or the bankruptcy estate. Debtor intends to switch its business operations and become a pool hall. Debtor plans to install billiards tables at its club and dispose of any topless entertainment.

For that reason, Debtor wishes to reject all of its current employment agreements with its employees, including the dancers, and the disc jockey.

B. **Rejection of Employment Contracts Makes Business Sense**.

Switching the nature of the business away from topless entertainment makes financial and business sense for the Debtor and the bankruptcy estate. Debtor's administrative expenses associated with operating a topless bar, projected labor and employment related expenses and litigation costs make it infeasible to continue operating in such manner. Specifically, beginning in March of 2022 and through November of 2022, Debtor has incurred over $172,157 in unpaid attorney fees and legal costs associated with compliance and labor related litigation that directly arose from its operations as a topless bar. That amounts to an average of $17,152 per month for the ten-month period. In addition, operating as a topless bar is costing Debtor $4,405.00 per month in insurance premiums and over $3,500 per month in payroll. In this bankruptcy case, if Debtor is to continue operating as a topless bar, its expected administrative expenses associated with labor and employment will be over $10,000 per month, in addition with the same fixed expenses for insurance and payroll, and added expenses associated with security. At this rate,

even without counting bankruptcy counsel's fees, Debtor will lose approximately $4,000 - $6,000 per month if it continues to operate in such manner.

In contrast, switching its operations to a pool hall without any topless entertainment will, first and foremost, save the Debtor over $3,500 in payroll and $3,000 in insurance premiums.[1] After the switch Debtor will only require a bartender, a position that will be filled by debtor's managers family members who will forego pay. Additionally, as a pool hall, Debtor will not need to spend $4,000 per month on security and will be able to cut that expense in half to $2,000 per month. Finally, the switch will also help Debtor save on administrative and labor related legal fees in the amount of $10,000 per month on average. Therefore, by switching its operations to a pool hall, Debtor will save an estimated $18,500 per month on expenses of which around $8,500 are operating expenses. Debtor estimates that its ongoing operating expenses as a result of the switch will drop from an estimated $23,374 to $15,780 per month.

Debtor is fully cognizant that its gross revenues are likely to drop as a result of such switch. In fact, Debtor estimates that its revenues will drop by around 40% to about $18,000 - $20,000 per month on average. However, even with this drop in revenues, Debtor is likely to generate net profit as a result of saving on administrative and labor related claims. Debtor estimates that its gross revenues will rise with time as it continues to market the bar as a pool hall rather than a topless bar.

**C. Debtor's Agreements with its Employees**

Debtor's agreements with its employees are verbal at will employment contracts. Debtor is free to terminate the employees at any time. These are the agreements that Debtro seeks to reject:

| Employee Name | Term of Agreement | Est. Amount of Monthly Wages |
|---|---|---|
| Cierra Louise Guevara | At will, no specific term | $729.00 |
| Dominque Orellana | At will, no specific term | $465.00 |

---

[1] Debtor has received quotes for insurance coverage as a pool hall without topless entertainment to be around $1500 per month.

**MOTION TO REJECT EMPLOYMENT AGREEMENTS**

- 4 -

| Nancie Tapo | At will, no specific term | $337.00 |
|---|---|---|
| Delaney Ross | At will, no specific term | $56.14 (has not worked since November of 2022 but not officially terminated) |
| Samantha Borrego | At will, no specific term | Has not worked since October of 2022 but not officially terminated. |
| Feather Jackson | At will, no specific term | $378.00 |
| Sabrina Guijarro | At will, no specific term | Has not worked since October of 2022 but not officially terminated. |
| Yevgenya Kazaryan | At will, no specific term | $364.16 |
| Petros Kazaryan | At will, no specific term | $350.00 |
| Marcos Renteria | At will, no specific term | $250.38 |

Not all of the employees work regularly on a weekly basis. For example Sabrina Guijarro and Samantha Borrego have not worked since October of 2022, and Delaney Ross has not worked since November 2022, although they have not been officially terminated. Generally, Debtor's disc jockey Marco Renteria works around 5-10 hours per week (20-46 hours per month), and dancers in general work around 30-35 hours per week (140 hours per month). These hours overlap, as debtor only provides for topless entertainment around 20-24 hours per week while being open 36 hours per week.

### D. The Court Should Authorize Debtor to Reject Employment Contracts

Section 365 provides that with certain exceptions to relevant to this case, Debtor may, subject to the court's approval, assume or reject executory contracts. 11 U.S.C. § 365(a). The employment agreements in question are executory contracts. In Chapter 11 cases, executory contracts generally may be assumed or rejected at any time before confirmation of a plan. 11 U.S.C. 365(d)(2).

MOTION TO REJECT EMPLOYMENT AGREEMENTS
- 5 -

Section 365 allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed. *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). "A bankruptcy court's hearing on a [trustee's] motion to reject is a summary proceeding that involves only a cursory review of a trustee's decision to reject the contract. Specifically, a bankruptcy court applies the business judgment rule to evaluate a trustee's rejection decision." *Durkin v. Benedor Corp. (In re G.I Indust., Inc.)*, 204 F.3d 1276, 23 1282 (9th Cir. 2000). The court should presume that the trustee acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate. *Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007). It should approve the rejection unless it finds that the trustee's conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice. *Id.*

In this case, Debtor's decision to reject all employment contracts is a sound exercise of its business judgment. Debtor cannot feasibly and profitably operate its current business with topless entertainment. While Debtor projects net income from current operations in the range of $4,000 - $8,000 per month, the mere amount of administrative expenses and labor related legal costs and expenses associated with operating a topless bar would offset any profit that the business makes for months to come. Debtor's estimation is that its labor compliance would cost around $10,000 per month even during this bankruptcy case, if Debtor continues to operate as a topless bar.

In contrast, switching its operations to a pool hall will allow Debtor to cut its insurance costs, payroll costs and legal and administrative expenses by around $18,500.00. These savings will more than offset any amount of income reduction that Debtor will suffer from removing topless entertainment from its business.

Debtor does not request retroactive rejection. The rejection of the employment agreements and termination of the employees will take place immediately upon the Court's entry of the order granting this motion. Further, upon termination of the employees, Debtor will pay any earned wages to such employees, which Debtor estimates to be around $1,750 at the time of rejection.

### E. Conclusion.

For the foregoing reasons, Debtor-in-possession requests that the Court enter an order authorizing it to reject employment agreements listed above.

Dated: 01/25/2023               YK Law, LLP

                                By: _____
                                    Vahe Khojayan
                                    Proposed Attorney for Debtor-in-possession

## DECLARATION OF STEPAN KAZARYAN

I, Stepan Kazaryan, declare as follows:

1. I am the managing member of 21st Century Valet Parking, LLC, debtor and Debtor in possession herein. I make this declaration in support of Debtor's motion to reject employment agreements..

2. The facts set for the herein are of my personal knowledge and if called upon to testify thereto, I could and would competently do so under oath.

3. On December 6, 2023 Debtor 21st Century Valet Parking, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continues to operate as a debtor in possession with all powers and responsibilities of a trustee in this case.

4. Debtor currently operates a topless dive bar, and employs among others, dancers and a disc jockey. Throughout this bankruptcy case, it has become clear to the Debtor that operating as a topless bar is not beneficial or financially feasible to the Debtor or the bankruptcy estate.

5. Therefore, Debtor intends to switch its business operations and become a pool hall with no topless entertainment. Debtor plans to install billiards tables at its club and dispose of any topless entertainment.

6. For that reason, Debtor wishes to reject all of its current employment agreements with its employees, including the dancers, and the disc jockey.

7. All of the employment agreement are at will employment agreement with no set term. None of the agreements are in writing. The employees get paid per pay period which is semi-monthly.

8. Debtor currently has the following employees:
    a. Cierra Louise Guevara who earns approximately $729.00 per pay period,
    b. Dominque Orellana, who earns approximately $465.00 per pay period.
    c. Nancie Tapo, who earns approximately $337.00 per pay period.
    d. Delaney Ross, who earns $56.14 per pay period, but has not showed up to work since November of 2022.
    e. Feather Jackson who earns on approximately $378.22 per pay period,

    f.  Yevgenya Kazaryan, who earns approximately $364.16 per pay period,

    g.  Petros Kazaryan, who earns approximately $350.00 per pay period

    h.  Marcos Renteria, who earns approximately $250.38 per pay period.

    i.  Sabrina Guijarro and Samantha Borrego have not appeared for work since October of 2022, although they have not been officially terminated.

9. Not all of the employees work regularly on a weekly basis. Generally, Debtor's Disc jockey Marco Renteria works around 5-10 hours per week (20-46 hours per month), and dancers in general work around 30-35 hours per week (140 hours per month). These hours overlap, as debtor only provides for topless entertainment around 20-24 hours per week while being open 36 hours per week.

10. Switching the nature of the business away from topless entertainment makes financial and business sense for the Debtor and the bankruptcy estate.

11. Debtor's administrative expenses associated with operating a topless bar, projected labor and employment related expenses and litigation costs make it infeasible to continue operating in such manner.

12. Specifically, beginning in March of 2022 and through November of 2022, Debtor has incurred over $172,157 in unpaid attorney fees and legal costs associated with compliance and labor related litigation that directly arose from its operations as a topless bar. That amounts to an average of $17,152 per month for the ten-month period.

13. In addition, operating as a topless bar is costing Debtor $4,405.00 per month in insurance premiums and over $3,500 per month in payroll. In this bankruptcy case, if Debtor is to continue operating as a topless bar, its expected administrative expenses associated with labor and employment will be over $10,000 per month, combined with the same fixed expenses for insurance and payroll, and added expenses associated with security.

14. At this rate, even without counting bankruptcy counsel's fees, Debtor will lose approximately $4,000 - $6,000 per month if it continues to operate in such manner.

15. Below are the current projections of Debtors income not including administrative expenses if debtor continues to operate as a topless bar.

|  | **January 2023** | **February 2023** | **March 2023** |
|---|---|---|---|
| **Projected Income** | $30,100.00 | $34,400.00 | $34,400.00 |
|  |  |  |  |

**MOTION TO REJECT EMPLOYMENT AGREEMENTS**

- 9 -

| Projected Expenses | | | |
|---|---|---|---|
| Rent | $8,250.00 | $8,250.00 | $8,250.00 |
| Utilities | $1,446.00 | $1,446.00 | $1,446.00 |
| Allied (beverage) | $700.00 | $700.00 | $700.00 |
| Budweiser (beverage) | $350.00 | $350.00 | $350.00 |
| Insurance | $4,405.00 | $4,405.00 | $4,405.00 |
| Payroll | $3,564.00 | $3,564.00 | $3,564.00 |
| CO2 Supplier | $270.00 | $270.00 | $270.00 |
| Mission Linen | $335.00 | $335.00 | $335.00 |
| Alarm System | $54.00 | $54.00 | $54.00 |
| Security | $4,000.00 | $4,000.00 | $4,000.00 |
| Total Expenses | $23,374.00 | $23,374.00 | $23,374.00 |

16. Any net income remaining from these operations would be offset by labor and employment compliance and litigation costs associated with operating topless entertainment venue.

17. In contrast, switching its operations to a pool hall without any topless entertainment will, first and foremost, save the Debtor over $3,500 in payroll and $3,000 in insurance premiums. I inquired into several quotes for insurance for a bar without topless entertainment and was informed that it would cost on average between $1,000 - $1,500 per month to maintain same type of insurance coverage as Debtor has now.

18. After the switch Debtor will only require a bartender, a position that will be filled by myself and my family members who will forego pay. Additionally, as a pool hall, Debtor will not need to spend $4,000.00 per month on security and will be able to cut that expense in half to $2,000.00. Finally, the switch will also help debtor save on administrative and labor related legal fees in the amount of $10,000 per month on average.

19. Therefore, by switching its operations to a regular pool hall and having Debtor's operate the business, as a pool hall, Debtor will save an estimated $18,500 per month on expenses. Debtor estimates that its ongoing operating expenses as a result of the switch will drop from an estimated $23,374 to $15,780 per month.

MOTION TO REJECT EMPLOYMENT AGREEMENTS
- 10 -

20. Debtor is fully cognizant that its gross revenues are likely to drop as a result of such switch. In fact, I estimate that Debtor's revenues will drop by around 40% to about $18,000 - $20,000 per month on average.

21. This estimate is based on the fact that debtor still generates revenue is based on the following facts:
    a. The club is open on average 6 hours per day for 6 days a week for an average of 36 hours, from 8pm to 2am. The club is closed on Mondays.
    b. Usually, topless entertainment starts at 10pm and ends at 2am. On occasion, dancers do not show up and there is no dancing for the day.
    c. Even without the topless dancers, patrons still do attend the club to watch sports and for drinks, and the club generates revenue from these sales.

22. However, even with this drop in revenues, debtor is likely to generate net profit as a result of saving on administrative and labor related claims. Debtor estimates that its gross revenues will rise with time as it continues to market the bar as a pool hall rather than a topless bar.

I declare under penalty of perjury Under the laws of the United States of America that the foregoing is true and correct

Dated: 01/25/2023                               By: _____
                                                     Stepan Kazaryan

---

MOTION TO REJECT EMPLOYMENT AGREEMENTS

- 11 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**445 S. Figueroa Street, Ste 2280, Los Angeles, CA 90071**

A true and correct copy of the foregoing document described as __**MOTION TO REJECT EMPLOYMENT AGREEMENTS**__ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On __**01/25/2023**__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

David E Ahdoot on behalf of Interested Party Courtesy NEF
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com
Katherine Bunker on behalf of U.S. Trustee United States Trustee (SV)
kate.bunker@usdoj.gov
John-Patrick McGinnis Fritz (TR)
jpftrustee@lnbyg.com, jpf@trustesolutions.net
Vahe Khojayan on behalf of Debtor 21st Century Valet Parking, LLC
vkhojayan@yklaw.us
United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov
Nayla Wren on behalf of Interested Party Courtesy NEF
nayla.wren@nlrb.gov
Nayla Wren on behalf of Interested Party Nayla Wren
nayla.wren@nlrb.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On __**01/25/2023**__ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 01/25/2023 | Tina Chenorjoukian | /s/ Tina Chenorjoukian |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**MOTION TO REJECT EMPLOYMENT AGREEMENTS**
- 12 -

Feather Jackson
1910 Chestnut Ave #2
Long Beach, CA 90806

Cierra Guevara
7901 Willis Ave, Apt 105,
Panorama City, CA 91402

Delaney Ross
7657 Hinds Ave,
North Hollywood, CA 91601

Dominique Orrelana
1455 S. Cloverdale Ave,
Los Angeles, CA 90019

Marco Renteria
16809 Dalton Ave,
Gardena, CA 90247

Nancie Tapo
21825 Saticoy Street, Apt 6
Canoga Park, CA 91304

Petros Kazaryan
263 W. Olive Ave, #128
Burbank, CA 91502

Sabrina Guijarro
2518 Holladay Ave,
Bakersfield, CA 93313

Samantha Borrego
13108 Felloes Ave,
Sylmar, CA 91342

Yevgenya Kazaryan
263 W. Olive Ave, #128
Burbank, CA 91502

**MOTION TO REJECT EMPLOYMENT AGREEMENTS**

- 13 -